# EXHIBIT A

**MONTGOMERY McCRACKEN WALKER & RHOADS LLP**
BY:  Christopher Scott D'Angelo
IDENTIFICATION NO.:  28463
EMAIL:  cdangelo@mmwr.com
1735 MARKET STREET, 21ST FLOOR
PHILADELPHIA, PA  19103
(215) 772-1500



*Filed and Attested by the Office of Judicial Records 07 JUL 2020 12:21 pm M. RUSSO*

**ATTORNEYS FOR PLAINTIFFS**

| | |
|---|---|
| **KRISTIE PUTT,**<br>**GARY LIVINGSTON PUTT, and**<br>**GRAYSON LEE PUTT,**<br>　　　　　*Plaintiffs,*<br><br>　　v.<br><br>**TRIPADVISOR INC., also known as**<br>**TRIPADVISOR LLC**<br>　and<br>**VIATOR INC.,**<br>　　　　　*Defendants.* | PHILADELPHIA COUNTY<br>COURT OF COMMON PLEAS<br>TRIAL DIVISION<br><br>CIVIL ACTION<br><br>OCTOBER TERM, 2019 - NO. 02272<br><br>JURY TRIAL DEMANDED |

## NOTICE TO DEFEND

| **NOTICE** | **AVISO** |
|---|---|
| You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.<br><br>YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.<br><br>Philadelphia Bar Association<br>Lawyer Referral and Information Service<br>One Reading Center<br>Philadelphia, Pennsylvania 19107<br>(215) 238-6333<br> TTY (215) 451-6197 | Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta ascentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.<br><br>LLEVE ESTA DEMANDA A UN ABOGADO IMMEDIATAMENTE. SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO, VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.<br><br>Asociacion De Licenciados De Filadelfia<br>Servicio De Referencia E Informacion Legal<br>One Reading Center<br>Filadelfia, Pennsylvania 19107<br>(215) 238-6333<br>TTY (215) 451-6197 |

Case ID: 191002272

MONTGOMERY McCRACKEN WALKER & RHOADS LLP
BY:  Christopher Scott D'Angelo
IDENTIFICATION NO.: 28463
EMAIL: cdangelo@mmwr.com
1735 MARKET STREET, 21ST FLOOR
PHILADELPHIA, PA  19103
(215) 772-1500     **ATTORNEYS FOR PLAINTIFFS**

| | |
|---|---|
| **KRISTIE PUTT**<br>537 5th Street<br>Tyrone, PA 16686<br><br>**GARY LIVINGSTON PUTT**<br>537 5th Street<br>Tyrone, PA 16686<br><br>**GRAYSON LEE PUTT**<br>537 5th Street<br>Tyrone, PA 16686,<br><br>*Plaintiffs,*<br><br>v.<br><br>**TRIPADVISOR INC., also known as TRIPADVISOR LLC**<br>400 1st Avenue<br>Needham, MA 02494<br><br>**VIATOR INC.**<br>360 3rd Street, Suite 400<br>San Francisco, CA 94107<br><br>*Defendants.* | PHILADELPHIA COUNTY<br>COURT OF COMMON PLEAS<br>TRIAL DIVISION<br><br>CIVIL ACTION<br><br>OCTOBER TERM, 2019 - NO. 02272<br><br>JURY TRIAL DEMANDED |

**COMPLAINT—CIVIL ACTION**
**(NEGLIGENCE—OTHER PERSONAL INJURY)**

This case concerns traumatic injuries sustained by Kristie Putt and her two sons, Gary Livingston Putt and Grayson Lee Putt, in and as a result of a motor vehicle accident on a tour bus in New Zealand on October 23, 2017 and TripAdvisor's/Viator's failure to properly investigate, vet, select, monitor and manage its tour service providers.  They were exposed to the egregious misconduct, acts and omissions that led to their injuries only because the travel and tour service agency, TripAdvisor Inc., also known as TripAdvisor LLC, and Viator Inc. (collectively, "Defendants"), selected incompetent tour operators,

Case ID: 191002272

failed to properly investigate, vet, select, monitor and manage their tour operators, designed a dangerous tour itinerary, and failed to disclose the cavalier, negligent and inadequate approach, or lack thereof, to investigating, vetting, selecting, monitoring and managing tour operators, as well as relevant safety risks.

**I.     PARTIES**

1. Plaintiff Kristie Putt ("Ms. Putt"), an adult individual, is a citizen of the Commonwealth of Pennsylvania, residing at 537 5th Street, Tyrone, PA 16686.

2. Plaintiff Gary Livingston Putt ("Gary"), an adult individual, is a citizen of the Commonwealth of Pennsylvania, residing at 537 5th Street, Tyrone, PA 16686. Gary is a son of Ms. Putt. At the time of the accident, Gary was a minor.

3. Plaintiff Grayson Lee Putt ("Grayson"), an adult individual, is a citizen of the Commonwealth of Pennsylvania, residing at 537 5th Street, Tyrone, PA 16686. Grayson is a son of Ms. Putt. At the time of the accident, Grayson was a minor.

4. Defendant TripAdvisor Inc., also known as TripAdvisor LLC, is a business entity that regularly conducts business in the County of Philadelphia, with a business office at 400 1st Avenue, Needham, MA 02494.

5. Defendant Viator Inc. is a corporation that regularly conducts business in the County of Philadelphia, with business offices at 400 1st Avenue, Needham, MA 02494 and/or 360 3rd Street, Suite 400, San Francisco, CA 94107.

6. At all times material hereto, Defendants were acting by and through authorized actual or ostensible agents, servants, employees and others for whom Defendants have responsibility, acting within the scope of their employment and/or agency. Such authorized actual or ostensible agents, servants, employees and others for whom Defendants have responsibility included Dune Rider Unique Tours and Canterbury Leisure Tours.

**II.    JURISDICTION AND VENUE**

7. Defendants, at all times material hereto, have regularly conducted business and/or had at least minimum contacts in the Commonwealth of Pennsylvania. The transactions giving rise to these

claims arose in substantial part in Pennsylvania.

8.  Defendants, at all times material hereto, have regularly conducted business in Philadelphia, such that venue is proper in this Court.

### III. FACTS

#### A. Booking the Tour

9.  On August 15, 2017, Ms. Putt booked a three-day tour in New Zealand for herself and her two sons, Gary and Grayson

10. At that time, Ms. Putt was a 47 year old woman in great health, living a physically active lifestyle.

11. The tour was scheduled to take place from October 22, 2017, to October 24, 2017, as part of the family's two week stay in New Zealand.

12. It was to be a celebratory trip, as one of her sons had just beaten cancer.

13. It was to be the trip of a lifetime, and Ms. Putt relied on Defendants' self-proclaimed expertise in making sure that all went according to plan.

14. Ms. Putt booked the tour through the website of Viator, which held itself out as a TripAdvisor company.

15. Defendants TripAdvisor Inc., also known as TripAdvisor LLC, and Viator Inc. are entities engaged in the business of providing travel related services and tours.

16. Defendants conduct business over the internet, hosting a website that allows customers to purchase and book tours online, as well as browse other customers' reviews of the offered tour packages. In other words, and as part of their business model, Defendants sell and advertise travel services to customers wherein the point of sale is at the customer's location.

17. Defendants target customers throughout the county, including the Commonwealth of Pennsylvania, through the transmission of electronic data. Defendants then process those requests, and earn a profit.

18. As part of their services, Defendants recommend and place their customers with tour

operators, and guide their customers in designing a tour itinerary.

19. Defendants brought their guidance and expertise to bear on Ms. Putt's booking of her New Zealand tour, recommending a three-day tour package that included a tour along Ninety Mile Beach.

20. Defendants failed to vet or otherwise be certain that the tour operator was qualified to provide and/or did provide safe tours, operators and equipment, in compliance with applicable standards, laws and expectations.

21. Defendants provided the Putts with a tour operator who was not qualified to provide and/or did not provide safe tours, operators and equipment, in compliance with applicable standards, laws and expectations.

22. Defendants failed to use reasonable care in the investigation, examination, certification, selection and acceptance of tour operators, including the selection of Dune Rider Unique Tours and Canterbury Leisure Tours as the tour operator and supplier herein (individually and collectively, "tour operator" or "tour operators").

23. Defendants failed to disclose the safety risks that the tour posed at the time Ms. Putt purchased the tour.

24. Defendants failed to disclose that they had not, adequately if at all, investigated, examined, certified, vetted, selected and accepted, monitored and/or managed their tour operators, including the selection of Dune Rider Unique Tours and Canterbury Leisure Tours as the tour operators herein, to determine that such operators reliably operated safely, ably, and in compliance with applicable standards and laws, or otherwise.

**B.    The Tour Gone Wrong**

25. On October 23, 2017, day two of the tour, Ms. Putt and her two sons, Gary and Grayson, were picked up in a tour bus by Dune Rider Unique Tours to take a day trip that included a drive along Ninety Mile Beach.

26. The supplier of the travel service and/or tour operator was Canterbury Leisure Tours.

27. The tour bus that picked Ms. Putt and her sons up had all of the seatbelts ripped out.

Indeed, there were holes in the seats where the seatbelts used to be.

28.     This was not standard practice for the New Zealand transportation industry, as Ms. Putt and her sons used other transportation services in New Zealand, and they were always told to put their seatbelts on.

29.     The bus driver on the tour operated by Dune Rider Unique Tours and Canterbury Leisure Tours paid no attention to this dangerous omission, never mentioning anything about seatbelts or corrective measures that the passengers could take to remain safe while on the bus, nor did the bus driver operate the bus to take the lack of seatbelts into account.

30.     The bus driver failed to operate the bus in a safe and reasonable manner and/or in accordance with applicable laws, rules and regulations.

31.     Further, the bus driver failed to warn the passengers that the drive could get bumpy and/or rough.

32.     After getting on the bus, Ms. Putt sat in the very back seat on the right-hand side next to a window.

33.     Her two sons, Gary and Grayson, sat near her.

34.     The bus then drove along Ninety Mile Beach, through the sand and shallow surf.

35.     Shortly after setting out, the bus driver was speeding, and it appeared that he was racing with the tide.

36.     After several minutes of smooth riding, and without warning, the bus hit a very large ditch that threw every person on the bus out of their seats.

37.     The bus driver and Defendants knew or should have known that there were such ditches and dangers and/or the possibility of such ditches and dangers along the beach.

38.     Ms. Putt was flung three feet into the air, at least twice, hitting the roof, and also flung against the window and side of the bus.

39.     Ms. Putt hit her head, neck and shoulders on the roof of the bus.  Her glasses flew off of her face and landed three rows in front of her.

40. She hit the roof of the bus with such force that the roof was dented.

41. She also slammed her right side, including her head, arm, and shoulder, with force against the window and side of the bus, as the bus bounced and rocked back and forth.

42. Her two sons, Gary and Grayson, witnessed their mother being thrown and injured.

43. Passengers' personal items that had been sitting on seats were thrown to the floor.

**C.  The Aftermath**

44. In the immediate aftermath of the accident, Ms. Putt sustained a concussion, and traumatic injuries to her head, neck, shoulders, back, and spine.

45. Gary and Grayson, then minors, watched in horror as their mother was taken off the bus by emergency medical personnel, and placed on a gurney with a neck brace, and taken to the hospital.

46. At the hospital, Ms. Putt was x-rayed, treated, and eventually discharged.

47. Her two sons rode with her in the ambulance, and were terrified.

48. Ms. Putt continued to suffer severe pain in her head, right arm, right shoulder, collarbone and back.  She had substantial and debilitating limitations of movement.

49. The rest of the New Zealand trip was ruined.  Ms. Putt could not even dress herself without the aid of her sons.

50. When Ms. Putt returned home, endless doctor's visits, testing, and injections were waiting for her.

51. An MRI revealed that her C7 vertebra was fractured.

52. She had limited use of her arms, and had limited range in her head, neck, shoulder and back.

53. At one point, she had to wear a hard-collar neck brace for eight weeks.

54. On April 19, 2018, she had right shoulder surgery.

55. With a lengthy recovery period, she was attending physical therapy two to three times per week, and being constantly awaken at night by intolerable pain.

56. Unable to tolerate pain medication well, she relied upon massage therapy for some relief.

57. Longing to return to the physically active lifestyle that was taken from her, she has suffered, and continues to suffer, from the emotional impact and occasional depression as a result of the incident and injuries sustained.

58. All told, Ms. Putt has been in daily pain and has suffered significant limitations for several years, and all indications are that these injuries and results will be permanent.

59. The injuries and losses suffered by Ms. Putt and her two sons, Gary and Grayson, are the direct and proximate result of the aforementioned conduct, acts and omissions of Defendants, their agents, servants, employees, ostensible agents and/or service providers, and others for whom Defendants have responsibility, and were due in no manner to any act on the part of Plaintiffs herein.

60. As a direct and proximate result of the aforementioned conduct, acts and omissions of Defendants, their agents, servants, employees, ostensible agents and/or service providers, and others for whom Defendants have responsibility, Ms. Putt and her two sons, Gary and Grayson, suffered severe and permanent injuries, expenses, losses and other damages.

61. As a direct and proximate result of the aforementioned conduct, acts and omissions of Defendants, their agents, servants, employees, ostensible agents and/or service providers, and others for whom Defendants have responsibility, Ms. Putt was caused to experience multiple injuries and damages (some or all of which may be permanent in nature), including a concussion, a fractured C7 vertebra, injuries to her right arm, shoulder, and collarbone, necessitating surgery and use of a neck brace, injuries to her head and neck, causing limited range of movement, generalized muscle weakness and spasticity, the need for frequent physical therapy, past and future pain, past and future suffering, embarrassment, humiliation, past medical expenses, future medical expenses, loss of life's pleasures, depression, anxiety, mental anguish, and the full measure of damages allowed under the law and under the categories of expenses, support, and services.

62. As a direct and proximate result of the aforementioned conduct, acts and omissions of Defendants, their agents, servants, employees, ostensible agents and/or service providers, and others for whom Defendants have responsibility, Ms. Putt was caused to undergo multiple medical tests, medical

injections, doctor's appointments, surgery, and extensive physical therapy.

63. As a direct and proximate result of the aforementioned conduct, acts and omissions of Defendants, their agents, servants, employees, ostensible agents and/or service providers, and others for whom Defendants have responsibility, Ms. Putt has incurred in the past and may in the future continue to incur substantial medical and medically related expenses including, but not limited to, expenditures for medicine, hospitalizations, medical and surgical care, testing, physical therapy, rehabilitative care, equipment, and other care to attend to, treat, and attempt to alleviate, minimize, and/or cure her conditions.

64. As a direct and proximate result of the aforementioned conduct, acts and omissions of Defendants, their agents, servants, employees, ostensible agents and/or service providers, and others for whom Defendants have responsibility, Ms. Putt has suffered and/or may suffer a loss of earnings and an impairment of her earning capacity and power.

65. As a direct and proximate result of the aforementioned conduct, acts and omissions of Defendants, their agents, servants, employees, ostensible agents and/or service providers, and others for whom Defendants have responsibility, Ms. Putt has suffered physical and mental impairments which have prevented her from performing all or substantially all of her material acts and duties of her customary and usual daily activities, and may have or may suffer a loss because of expenses which have been or may be reasonably incurred in obtaining ordinary and necessary services in lieu of those which she would have performed herself, to her great detriment and loss.

66. As a direct and proximate result of the aforementioned conduct, acts and omissions of Defendants, their agents, servants, employees, ostensible agents and/or service providers, and others for whom Defendants have responsibility, Gary and Grayson were caused to experience injuries and damages (some or all of which may be permanent in nature), including past and future suffering, embarrassment, humiliation, loss of life's pleasures, severe emotional distress and related physical manifestations, including but not limited to nightmares, depression, anxiety, and the full measure of damages allowed under the law and under the categories of expenses, support, and services.

67. As a direct and proximate result of the aforementioned conduct, acts and omissions of Defendants, their agents, servants, employees, ostensible agents and/or service providers, and others for whom Defendants have responsibility, Ms. Putt and her two sons, Gary and Grayson, were unable to obtain the enjoyment and relaxation, and other benefits, of their trip to New Zealand, for which they paid a large sum of money.

IV. **CAUSES OF ACTION**

**COUNT ONE: NEGLIGENCE**
**Ms. Putt v. All Defendants**

68. The previous paragraphs are incorporated by reference as though fully set forth herein.

69. Defendants were under a duty to investigate, examine, select, monitor and supervise their agents and tour providers to ensure that they are qualified and operate in accordance with the highest safety standards and all applicable laws and regulations, and that their customers would be free from harm.

70. Defendants owed a duty to Ms. Putt to investigate, examine, select and engage only safe and qualified tour operators who comply with the highest safety standards and all applicable laws and regulations, and to monitor their tour operators to be sure that the services provided were in accordance with the highest safety standards and all applicable laws and regulations, and the reasonable expectations of customers, and to design a reasonable and safe tour itinerary.

71. Defendants had or should have had knowledge that their tour operators were not qualified and/or not operating safely and in accordance with, or could not be relied upon to operate safely and in accordance with, all applicable safety standards, laws and regulations.

72. Defendants had or should have had knowledge of the existence of the aforesaid dangerous and hazardous conditions of the tour at issue.

73. The negligence of Defendants is direct and vicarious, and is based upon, among other things, the principles of agency, *respondeat superior*, and other liability.

74. Defendants, their agents, servants, employees, ostensible agents, subcontractors and/or

others for whom Defendants have responsibility were careless and negligent in one or more of the following ways:

 (a) failing to use reasonable care in the investigation, examination, certification, selection and acceptance of their tour operators, including the selection of Dune Rider Unique Tours and Canterbury Leisure Tours as the tour operators herein;

 (b) failing to use reasonable care in the designing and execution of the tour itinerary;

 (c) misrepresenting the tour and the tour operators, and failing to comply with Defendants' advertising and representations;

 (d) failing to warn of the unsafe conditions and dangers of the New Zealand tour at issue;

 (e) failing to provide proper control and supervision of the tour and/or tour operators at issue;

 (f) permitting the tour operator to use substandard and noncompliant modes of transportation, including but not limited to the lack of seat belts;

 (g) operating and/or permitting the tour operator to operate in a negligent, reckless, substandard and noncompliant manner;

 (h) failing to fulfill the duties described above;

 (i) failing to exercise reasonable care under the circumstances;

 (j) failing to investigate and otherwise monitor the operations and conduct of Dune Rider Unique Tours and Canterbury Leisure Tours;

 (k) failing to enforce safety laws, standards and other requirements; and

 (l) failing to operate the tour bus and/or require the tour operator to operate the tour bus in a reasonable and safe manner.

 75. Defendants' conduct, acts and omissions were the proximate cause of Ms. Putt's injuries and losses, as previously set forth.

 WHEREFORE, Plaintiff Kristie Putt demands damages against Defendants in an amount in

excess of $50,000, and all such other relief as this Court may deem just and proper.

## COUNT TWO:  MISREPRESENTATION
### Ms. Putt v. All Defendants

76. The previous paragraphs are incorporated by reference as though fully set forth herein.

77. Defendants had a duty to disclose that the drive along Ninety Mile Beach could be rough, bumpy, and/or dangerous, and that the tour operator was not qualified to provide and/or did not provide safe tours, operators and equipment, in compliance with applicable standards, laws and expectations.

78. Defendants had a duty to disclose that they had not investigated, examined, certified, selected, monitored, and do not investigate, examine, certify, select, monitor, or supervise, their agents and tour providers to ensure that they are qualified and operate safely and in accordance with all applicable safety standards, laws and regulations, use safe and compliant equipment, and that their customers would be free from harm.

79. By failing to make these disclosures, Defendants misrepresented and/or concealed material facts and perpetuated the illusion that the bus tour would be operated by qualified, vetted, and safe operators who adhered to all applicable safety standards, laws and regulations, and otherwise posed no risk of injury.

80. Defendants either knew that their express or implicit assurance of safety was false, made that assurance without knowledge as to its truth or falsity, or made that assurance under circumstances in which Defendants ought to have known of its falsity or unreliability.

81. Defendants intended the misrepresentation and omission to induce customers, specifically Ms. Putt, to act on it.  Indeed, and upon information and belief, it is precisely because Defendants do not publicize the risks of the tour, the lack of investigation, qualification, selection and monitoring of their operators, and the unreliability of their tour operators, that they are able to attract customers.

82. Ms. Putt acted in justifiable reliance on the misrepresentations and omissions.  Indeed, she would not have purchased the tour had she known of the Defendants' failures described above or of the fact that the tour operators provided had not been vetted in any way or of the risk of injury or the

conditions and reliability of the tour, the tour operators and equipment..

83. As a result of this reliance, Ms. Putt was injured and suffered losses, as previously set forth.

WHEREFORE, Plaintiff Kristie Putt demands damages against Defendants in an amount in excess of $50,000, and all such other relief as this Court may deem just and proper.

### COUNT THREE:  NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
#### Gary Putt and Grayson Putt v. All Defendants

84. The previous paragraphs are incorporated by reference as though fully set forth herein.

85. Gary and Grayson were passengers on the bus when their mother, Ms. Putt, suffered the injuries previously set forth.

86. Gary and Grayson observed their mother being thrown from her seat, and the resulting aftermath of the accident as previously set forth.

87. The mother of Gary and Grayson, Ms. Putt, suffered the injuries and losses previously set forth.

88. Gary and Grayson observed a tortious injury to a close relative, namely their mother, Ms. Putt.

89. As a result of observing the accident that injured their mother, Gary and Grayson were injured and suffered losses, as previously set forth.

WHEREFORE, Plaintiffs Gary and Grayson demand damages against Defendants in an amount in excess of $50,000, and all such other relief as this Court may deem just and proper.

Dated:  July 7, 2020          s/ CS D'Angelo
Christopher Scott D'Angelo
Montgomery McCracken Walker & Rhoads LLP
*Attorney for Plaintiffs*

**VERIFICATION**

      I, Kristie Putt, one of the plaintiffs in this action, verify and state that the statements made in this Complaint are true and accurate to my knowledge, information, and belief.  I understand that the statements in this Verification are made subject to the penalties of 18 Pa.C.S. § 4904, relating to unsworn falsification to authorities.

Dated: July 2, 2020

                                                        _____
                                                        Kristie Putt

**CERTIFICATE OF SERVICE**

I, Christopher Scott D'Angelo hereby certify that on this 7th day of July, 2020, I caused the foregoing *Complaint* to be electronically filed with the Clerk of the Court by using the electronic filing system which will send a notice of electronic filing to the following:

>Jason A. Levine
>Hangley Aronchick Segal Pudlin & Schiller
>jlevine@hangley.com
>
>*Counsel for Defendants*
>*TripAdvisor Inc., TripAdvisor LLC, and Viator Inc.*

s/ CS D'Angelo
Christopher Scott D'Angelo
